## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| RLI INSURANCE COMPANY, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No.: 1:23-cv-1079 |
| | § | |
| TERRY BRIGGS, SHAWNA BRIGGS, | § | |
| BRIGGS BROTHERS ENTERPRISES | § | |
| CORPORATION, a Pennsylvania | § | |
| Corporation, BRIGGS BROTHERS | § | |
| ENTERPRISES CORPORATION, a | § | |
| Texas Corporation, BRIGGS BROTHERS | § | |
| ENTRPRISES CORPORATION, a | § | |
| Louisiana Corporation, and BRIGGS | § | |
| BROTHERS ENTERPRISES | § | |
| CORPORATION, a Georgia Corporation | § | |
| | § | |
| Defendants. | § | |

### RLI INSURANCE COMPANY'S ORIGINAL VERIFIED COMPLAINT

Plaintiff RLI Insurance Company ("RLI") hereby complains of Defendants Terry Briggs, Shawna Briggs, Briggs Brothers Enterprises Corporation, a Pennsylvania Corporation, Briggs Brothers Enterprises Corporation, a Texas Corporation, Briggs Brothers Enterprises Corporation, a Louisiana Corporation, and Briggs Brothers Enterprises Corporation, a Georgia Corporation, (Defendants are collectively referred to as "Indemnitors") as follows:

### I.
### PARTIES

1.     RLI Insurance Company is an Illinois corporation with its principal place of business in Illinois.

2.      Terry Briggs is an individual residing in Georgia. Terry Briggs is a citizen of the State of Georgia who may be served with process at his residence and/or usual place of abode in Smyrna, Georgia 30030, or wherever he may be found.

3.      Shawna Briggs is an individual residing in Georgia. Shawna Briggs is a citizen of the State of Georgia who may be served with process at her residence and/or usual place of abode in Conyers, GA, or wherever she may be found.

4.      Briggs Brothers Enterprises Corporation, a Pennsylvania Corporation, is a Pennsylvania corporation with its principal place of business in Pennsylvania. Briggs Brothers Enterprises Corporation, a Pennsylvania corporation, may be served with process by serving its President, Terry Briggs, at his residence located in Smyrna, GA 30030, his business address of 4749 Sansom, Philadelphia, PA 19139, or wherever he may be found.

5.      Briggs Brothers Enterprises Corporation, a Texas corporation, is a Texas Corporation with its principal place of business in Texas. Briggs Brothers Enterprises Corporation, a Texas corporation, may be served with process by serving its President, Terry Briggs, at his residence located in Smyrna, GA 30030, his business address of 4201 Cypress Creek Parkway, Suite 255, Houston, TX 77068, or wherever he may be found.

6.      Briggs Brothers Enterprises Corporation, a Louisiana corporation, is a Louisiana Corporation with its principal place of business in Louisiana. Briggs Brothers Enterprises Corporation, a Louisiana corporation, may be served with process by serving its President, Terry Briggs, at his residence located in Smyrna, GA 30030, his business address of 412 N. 4th Street, Suite 336, Baton Rouge, LA 70802, or wherever he may be found.

7.      Briggs Brothers Enterprises Corporation, a Georgia Corporation, is a Georgia corporation with its principal place of business in Georgia. Briggs Brothers Enterprises Corporation,

a Georgia corporation, may be served with process by serving its President, Terry Briggs, at his residence located in Smyrna, GA 30030 or wherever he may be found.

## II.
## JURISDICTION

8.      This Court has jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1332(a) in that this is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

## III.
## VENUE

9.      Venue is proper in this Court pursuant to the valid and enforceable forum selection clause in Paragraph 27 of the Agreement of Indemnity that is the subject of this dispute, a true and correct copy of which is attached hereto as Exhibit A (the "Indemnity Agreement"). The Indemnitors expressly agreed to the United States District Court for the Central District of Illinois as the venue with respect to any matter arising under or related to the Indemnity Agreement. Venue is also proper in this Court and this Division because RLI maintains its corporate headquarters in Peoria, Illinois, and Indemnitors' obligations under the Indemnity Agreement are owed to RLI in Illinois.

## IV.
## FACTS

### A.  The Indemnitors execute the Indemnity Agreement.

10.      Indemnitors executed the Indemnity Agreement, dated December 1, 2019, in favor of RLI.[1] The Indemnity Agreement was executed and delivered to RLI as consideration for the issuance of certain surety bonds on behalf of Indemnitors.

---

[1] *See* Exhibit A, Indemnity Agreement.

11.    Pursuant to the Indemnity Agreement, which is governed by Illinois law, Indemnitors agreed, in relevant part, as follows:

> Indemnity. The Indemnitors agree to exonerate, indemnify and hold [RLI] harmless from and against all Loss. Upon demand, the Indemnitors shall pay to [RLI], as soon as liability exists or is asserted against [RLI], whether or not [RLI] shall have made any payment therefor. Such payment shall be equal to such amounts as [RLI], in its sole discretion, deems sufficient to protect it from Loss or potential Loss. The vouchers or other evidence of any such payments made by [RLI] shall be prima facie evidence of the fact and amount of the liability of the Indemnitors to [RLI]. The obligations of the Indemnitors under this Agreement are joint and several. In the event of any claim or demand being made by [RLI] against the Indemnitors, or any one or more of the parties so designated, by reason of the execution of a Bond or Bonds, [RLI] is hereby expressly authorized to settle with any one or more of the Indemnitors individually, and without reference to the others, and such settlement or composition shall not affect the liability of any of the others, and Indemnitors hereby expressly waive the right to be discharged and released by reason of the release of one or more of the joint debtors, and hereby consent to any settlement or composition that may hereafter be made…

> ***

> Collateral Security. At any time, if [RLI] is threatened with liability, receives a claim against a Bond, or believes that it may incur liability, the Indemnitors will, immediately upon demand, and regardless of whether [RLI] has made any payment, incurred liability, or established a reserve, pay [RLI] an amount [RLI] deems, in its sole discretion, is necessary to protect itself from a potential Loss or actual Loss. [RLI] shall have the right to use the deposit, or any part thereof, as collateral security for a Loss, to reimburse itself for a Loss it paid, and/or to pay for a Loss. [RLI] shall have no obligation to invest said collateral or to provide a return and/or interest on the collateral deposit. [RLI] will return any unused portion of the deposit upon the termination of [RLI]'s liability on the Bonds and after [RLI] has fully reimbursed itself for its Loss under this Agreement. The Indemnitors acknowledge and agree that their failure to provide collateral security to [RLI] in accordance with the provisions of this section shall irreparably harm [RLI] and that monetary damages will be inadequate to compensate [RLI]. The Indemnitors waive any and all defenses they may have to such a request and shall not raise any defense in opposition to a request for order requiring the posting or deposit of collateral security.

*See* Exhibit A, at ¶¶ 3-4.

12.    Further, Indemnitors agreed that all contract funds are trust funds. Paragraph 7 of the Indemnity Agreement provides in pertinent part as follows:

Contract Funds are Trust Funds. If any of the Bonds are executed in connection with a Contract, the Indemnitors, as trustees, covenant and agree that all payments received for or on account of said Contract or obligation shall be held as a trust fund, in which the materials, services, equipment or supplies furnished in the prosecution of the work provided in said Contract or obligations or any authorized extension or modification thereof, and, further, the Indemnitors expressly understand and declare that all monies due and to become due under any Contract or obligations covered by any Bond are trust funds, whether in the possession of the Indemnitors or otherwise, for the benefit of and for payment of all such obligations in connection with any such Contract or obligations for which the Company would be liable under any of [sic] Bond, which said trust also inures to the benefit of the Company for any liability or loss it may have or sustain under any Bond, and this Agreement and declaration shall also constitute notice of such trust. If the Company satisfies any liability on any Bond, the Company shall be entitled to assert the claim of the claimant to the trust funds, in its own name or that of the claimant. In addition to the trust obligations agreed to hereinabove and not as a requirement to such trust obligations, the Indemnitors shall, upon demand of the Company, open an account in the bank or other depository approved by the Company, in the name of the Company or designated as a trust account for Company, and shall deposit therein all monies received from the contracts covered by any Bond. Withdrawals from the trust account shall require countersignature by a representative of the Company. The trust shall terminate upon satisfaction of all obligations for which the trust is hereby created, or 20 years from the date of this Agreement, whichever occurs first.

*See* Exhibit A, at ¶ 7.

13. Indemnitors also agreed that RLI has the right to review, inspect, and copy their books, records, accounts, documents and electronically stored information in relevant part as follows:

Books and records. At any time in its sole discretion, [RLI] shall have the right to review, inspect and copy the books, records, accounts, documents, and electronically-stored information of each and all of the Indemnitors, individually and collectively. The Indemnitors specifically hereby authorize any bank, depository, materials supplier, trade creditor, governmental entity, including, but not limited to, any one or more departments of any state, commonwealth, county, city, municipality, parish or territory of the United States and the United States itself, or other person, firm, or entity to furnish to [RLI] upon [RLI]'s request, any information [RLI] requests including, but not limited to, account balances, the status of the work under contracts being performed by the Principal, the condition of the performance of such Contracts, and payments of accounts payable to the Principal.

*See* Exhibit A, at ¶ 13.

**B. In reliance on the Indemnity Agreement, RLI issues bonds naming Briggs as principal.**

14.     In reliance on the Indemnity Agreement and at the request of Indemnitors, RLI issued numerous surety bonds, including payment bonds, performance bonds, bid bonds and certain other bonds (the "Bonds"), naming Briggs Brothers Enterprises Corporation as principal, including, but not limited to, the following:

| | | |
|---|---|---|
| a. | Bond No.: | RCB0035235 |
| | Penal Amt.: | $3,783,327.77 |
| | Obligee: | Massey Oaks Development, LP on behalf of Brazoria County MUD No. 69 |
| | Project: | Lake Amenity/Detention & Storm Sewer to serve Massey Oaks Phase 1 within Brazoria County Municipal District No. 69 |
| b. | Bond No.: | RCB0035243 |
| | Penal Amt.: | $1,051,702.50 |
| | Obligee: | United States Department of Agriculture (Farm Production and Conservation Business) |
| | Project: | EWP – Jasper County – Jasper County, Texas |
| c. | Bond No.: | RCB0037838 |
| | Penal Amt.: | $1,866,225.00 |
| | Obligee: | Sweetgrass Development, LLC. |
| | Project: | Regional Drainage Channel and Detention to serve Sweetgrass Village Subdivision for Sweetgrass Village Development on behalf of Lago Bello Municipal District No. 1A, Harris County, Texas |
| d. | Bond No.: | RCB0037839 |
| | Penal Amt.: | $1,195,022.00 |
| | Obligee: | Sweetgrass Development, LLC |
| | Project: | Regional Drainage Channel to serve Sweetgrass Village Subdivision – 101 Sewer Construction |
| e. | Bond No.: | RCB0037840 |
| | Penal Amt.: | $2,291,366.83 |
| | Obligee: | Massey Oaks Development LP on behalf of Brazoria County MUD No. 69 |

|  | Project: | Reinforced Concrete Paving and Site Earthwork to serve Massey Oaks Sections 1 & 2 within Brazoria County Municipal Utility District No. 69 |

f.   Bond No.:    RCB0037847
     Penal Amt.:  $1,799,818.50
     Obligee:     Starlight Homes Texas, LLC
     Project:     Paving Improvements to Serve Idleloch Phase II (for Starlight Homes Texas, LLC)

g.   Bond No.:    RCB0037850
     Penal Amt.:  $2,988,666.50
     Obligee:     Fulshear Municipal Utility District No. 1
     Project:     Mass Grading and Regional/Amenity Pond Improvements for Fulbrook on Fulshear Creek MUD No. 1

h.   Bond No.:    RCB0037864
     Penal Amt.:  $2,404,394.00
     Obligee:     Fulshear Municipal Utility District No. 1
     Project:     Construction of Fulbrook on Fulshear Creek Section 17, Phase 1a and Lift Station No. 10

i.   Bond No.:    RCB0037865
     Penal Amt.:  $1,332,144.00
     Obligee:     Fulshear Municipal Utility District No. 1
     Project:     Construction of Fulbrook on Fulshear Creek Section 19, Phase 1a (WS&D Improvements)

j.   Bond No.:    RCB0037866
     Penal Amt.:  $754,699.50
     Obligee:     Fulshear Municipal Utility District No. 1
     Project:     Construction of Fulbrook on Fulshear Creek Section 19, Phase 1b (Paving Improvements)

k.   Bond No.:    RCB0037867
     Penal Amt.:  $842,746.00
     Obligee:     Fulshear Municipal Utility District No. 1
     Project:     Construction of Fulbrook on Fulshear Creek Section 18, Phase 1b (Paving Improvements)

l.   Bond No.:    RCB0037875
     Penal Amt.:  $19,615.00
     Obligee:     Fulshear Municipal Utility District No. 1
     Project:     Construction of Erosion Control Along the High Bank of Fulshear Creek (Behind 5423 Lake Hill Farm Way)

m.  Bond No.:    RCB0037876
    Penal Amt.:  $68,797.00
    Obligee:     Fulshear Municipal Utility District No. 1
    Project:     Construction of Erosion Control Along the High Bank of
                 Fulshear Creek (Behind 4811 Legend Creek Drive and 5307
                 Lake Hill Farm Way)

n.  Bond No.:    RCB0041889
    Penal Amt.:  $5,279,802.00
    Obligee:     Massey Oaks Development, L.P. on behalf of Brazoria
                 County Municipal District No. 69
    Project:     Paving, Storm Sewer, Sanitary Sewer Force Main & Water
                 Lines to serve South Harkey Road – Brazoria County MUD
                 No. 69

o.  BVN No.:     1ECD-EE56-E0A5-1CBA
    Penal Amt.:  $25,000.00
    Obligee:     Louisiana Department of Transportation and Development
    Project:     U.S. 190: Market Court, Sidewalks NHS Route H.011844.6-
                 R1

p.  BVN No.:     6923-61ED-CBFD-5FD1
    Penal Amt.:  $100,000.00
    Obligee:     Louisiana Department of Transportation and Development
    Project:     LA 3234 University Ave Sidewalks NHS Route H.013938.6

q.  Bond No.:    RCB0031450
    Penal Amt.:  $914,074.25
    Obligee:     Georgia Department of Transportation
    Project:     Concrete and (PCC) Pavement Rehab Services – District 2
                 Contract No. 48400-DOT0002177

r.  Bond No.:    RCB0035216
    Penal Amt.:  $616,792.00
    Obligee:     Greene County Water & Sewer Authority
    Project:     Greene County Water Improvements – New Office Building
                 – 701 Prairie Avenue, Eutaw, AL 35462

s.  Bond No.:    RCB0035259
    Penal Amt.:  $1,400,455.00
    Obligee:     U.S. Department of Transportation Federal Highway
                 Administration
    Project:     KS FTFW MACY 10(2), HQ Road, Intro Trail Roadway,
                 Parking Lot and Trail Construction

t.  Bond No.:    RCB0031453

|  | Penal Amt.: | $4,350,440.00 |
|  | Obligee: | U.S. Army Corps of Engineers |
|  | Project: | Flood Control, Sloped Flume Repairs |

u.  Bond No.:     RCB0037877
    Penal Amt.:   $453,848.76
    Obligee:      Louisiana Department of Transportation and Development
    Project:      LA 67: Rcut @ Blount Rd H.014408.6 – Concrete new pavement

v.  Bond No.:     RCB0041897
    Penal Amt.:   $1,371,191.06
    Obligee:      Georgia Department of Transportation
    Project:      I-85/SR 403 – Bridge Rehab Project M006110

w.  Bond No.:     RCB0041890
    Penal Amt.:   $3,968,183.28
    Obligee:      United States Department of Defense, U.S. Air Force
    Project:      Project No. DKFX 1052046, Repair Sewer Mains

The construction projects referred to in this paragraph are referred to herein as the "Projects."

**C. RLI receives multiple claims against the Bonds.**

15.     RLI has received multiple claims against the Bonds from payment bond claimants and obligees beginning in March 2022 and continuing to date. The face amount of payment bond claims received to date exceeds $7,000,000.00. While each claim is different, the claimants against the various payment bonds generally allege that Briggs Brothers Enterprises Corporation, or one of its subcontractors, failed to make payment for labor, equipment, or materials supplied to the various bonded Projects. By asserting payment claims against RLI's Bonds, those claimants now seek recovery from RLI for amounts allegedly unpaid. Several of these claimants have now filed litigation against RLI based on Briggs' alleged failures to pay, the first of which was filed on March 10, 2022, and is currently pending in the Western District of Oklahoma.

16.     In addition to the numerous payment bond claims, multiple performance and bid bond claims have been asserted against the Bonds. On or about May 25, 2022, RLI received notice

of Briggs Brothers Enterprises Corporation's alleged failures on the project known as Greene County Water Improvements – New Office Building – 701 Prairie Avenue, Eutaw, AL 35462 (the "Greene County Project"). On November 28, 2022, Greene County Water and Sewer Authority, Inc., the owner of the Greene County Project and obligee under the applicable Bond, noticed its termination of Briggs Brothers Enterprises Corporation and demanded that RLI step in to complete the Greene County Project, which Briggs Brothers Enterprises Corporation had allegedly abandoned in or around April 2022.

17.     On or about September 27, 2022, RLI received notice from the United States Department of Transportation of Briggs Brothers Enterprises Corporation's alleged failure to timely complete the project known as KS FTFW MACY 10(2), HQ Road, Intro Trail Roadway, Parking Lot and Trail Construction (the "KS Project"). Subsequently, on December 21, 2022, RLI again received notice of Briggs Brothers Enterprises Corporation's alleged failure to complete all work on the KS Project and the assessment of liquidated damages accordingly.

18.     On or about October 28, 2022, RLI received Notices of Forfeiture of Bid Bonds on the projects known as U.S. 190: Market Court, Sidewalks NHS Route H.011844.6-R1 and LA 3234 University Ave Sidewalks NHS Route H.013938.6.

19.     On November 30, 2022, RLI received notice of Briggs Brothers Enterprises Corporation's alleged failure to complete the project known as Paving Improvements to Serve Idleloch Phase II, specifically, alleging Briggs Brothers Enterprises Corporation failed and refused to perform all final remaining work on the project and providing RLI notice of the obligee's claim for damages, losses, expenses, and liabilities which may be suffered as a result.

20.     On December 6, 2022, RLI received correspondence from yet another obligee, Fulshear Municipal Utility District No. 1 ("Fulshear MUD"), providing notice of Briggs Brothers

Enterprises Corporation's alleged defaults, alleging Briggs Brothers Enterprises Corporation's abandonment as of November 4, 2022 and its intent to pursue a claim on RLI's Bonds on the following Projects in the event Briggs Brothers Enterprises Corporation failed to cure its alleged defaults:

- Mass Grading and Regional/Amenity Pond Improvements for Fulbrook on Fulshear Creek MUD No. 1;

- Construction of Fulbrook on Fulshear Creek Section 17, Phase 1a and Lift Station No. 10; and

- Construction of Fulbrook on Fulshear Creek Section 19, Phase 1a (WS&D Improvements).

21.     On the same day, RLI also received correspondence from Fulshear MUD providing notice of  Briggs Brothers Enterprises Corporation's alleged default on the Projects known as Construction of Fulbrook on Fulshear Creek Section 19, Phase 1b (Paving Improvements) and Construction of Fulbrook on Fulshear Creek Section 18, Phase 1b (Paving Improvements) and alleging Briggs Brothers Enterprises Corporation had failed to complete any work despite Notices to Proceed being issued on October 24, 2022, and October 7, 2022, respectively. Fulshear MUD demanded that RLI either takeover the two Projects or enter into a tender agreement with Fulshear MUD, paying the difference between Briggs Brothers Enterprises Corporation's bonded contract price and any increased price from a replacement contractor.

22.     Two days later, on December 8, 2022, RLI received additional notices of default/termination from Fulshear MUD based upon Briggs Brothers Enterprises Corporation's alleged failure to mobilize and claims for reimbursement on two projects: 1) the Construction of Erosion Control Along with the High Bank of Fulshear Creek (Behind 5423 Lake Hill Farm Way);

and 2) Erosion Control – High Bank of Fulshear Creek (Behind 4811 Legend Creek Drive and 53307 Lake Hill Farm Way).

23.     Subsequently, on January 25, 2023, notices of Briggs Brothers Enterprises Corporation's alleged default were received by RLI for the projects known as Regional Drainage Channel and Detention to serve Sweetgrass Village Subdivision for Sweetgrass Village Development on behalf of Lago Bello Municipal District No. 1A, Harris County, Texas; and Regional Drainage Channel to serve Sweetgrass Village Subdivision – 101 Sewer Construction alleging Briggs Brothers Enterprises Corporation's failures to complete the Projects pursuant to the bonded contracts.

24.     Several of the obligees under the Bonds have now terminated Briggs Brothers Enterprises Corporation under the bonded contracts and have made clear that they intend to assess liquidated damages for Briggs Brothers Enterprises Corporation's purported failures to timely complete under the bonded contracts, which will potentially decrease the amount of bonded contract funds available to complete these Projects and increase RLI's potential exposure. As of the date of this Complaint, Briggs Brothers Enterprises Corporation has been defaulted on at least eleven projects and terminated on at least nine of the Projects. Additionally, two bid bond claims remain outstanding.

**D.  The Indemnitors default under the Indemnity Agreement.**

25.     Pursuant to the Indemnity Agreement, any of the following, among others, constitute a default by the Indemnitors under the Indemnity Agreement:

> a.  each and every declaration of default, notice to cure, or request for conference with RLI by any obligee under any Bond for any Project;
>
> b.  any breach or abandonment of any bonded contract for any Project;
>
> c.  the breach of any provision of the Indemnity Agreement;

 d. the failure to make payment for any bill in connection with any contract for any Project;

 e. RLI's establishment of a reserve for claims and anticipated expenses;

 f. Any materially false or misleading representation furnished to RLI by or on behalf of any Indemnitor; or

 g. RLI receiving any claim, notice, demand, or request for payment related to any of the Bonds.

*See* Exhibit A, ¶ e.

26. The Indemnitors are and have been in default under the Indemnity Agreement for each and every one of the aforementioned reasons, including, but not limited to, the multiple noticed defaults and alleged breaches and abandonments on the Projects and the claims for nonpayment by Briggs Brothers Enterprises Corporation's subcontractors and suppliers. RLI remains exposed to substantial Loss, as defined in the Indemnity Agreement.

27. For months, RLI repeatedly requested documentation and information from Briggs Brothers Enterprises Corporation related to the Projects, its accounting, and the various claims asserted against the Bonds. Briggs Brothers Enterprises Corporation provided some information and documentation, but certainly has not fully complied with those requests. It became clear that Briggs Brothers Enterprises Corporation either had woefully inadequate record keeping practices or was purposefully avoiding disclosing documents, information, and accounting records that would reveal its misuse of contract funds or other inappropriate actions. As a result, due to the multiple significant performance, payment, and bid bond claims asserted against RLI's Bonds, on December 29, 2022, RLI issued correspondence to the obligees on the various Projects as specifically provided for and agreed to in Paragraph 9 of the Indemnity Agreement advising that no further bonded contract funds should be released to Briggs Brothers Enterprises Corporation without prior written consent and direction from RLI. This surety right, a right available to sureties

at common law and as recognized in this Indemnity Agreement, is very important and is intended to protect RLI's assignment rights in bonded contract funds (*see* Exhibit A, ¶ 6), its collateral security interest in bonded contract funds (*see* Exhibit A, ¶ 5), its trust rights in bonded contract funds (*see* Exhibit A, ¶ 7), its subrogation and other common law rights in contract funds, and otherwise, generally, to ensure the bonded contract funds are properly utilized to complete the Projects. Paragraph 9 of the Indemnity Agreement provides as follows:

> Company's Rights. If a Default occurs, then the Company shall have the right in its sole discretion, without any obligation, and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of the Agreement to: (a) notify any Obligee in writing that Principal is in Default with respect to this Agreement and/or to direct any Obligee withhold any further payments to Principal until Company consents to its release in any manner (Joint [sic] check, payment to Company, etc.) Company may, at its sole discretion, direct; and/or Take possession of any of the Principal's office equipment, project documents, specific project accounting records, contract documents, subcontracts, rental agreement, equipment, supplies, and/or material (whether ordered, delivered, or stored at the jobsite or any other location) as necessary to complete any work under any Contract.

*See* Exhibit A, ¶ 9.

28.     Simultaneously, RLI issued correspondence to Briggs Brothers Enterprises Corporation requesting a meeting to discuss potential paths forward in light of the multiple defaults on the Projects and claims against the Bonds and to determine if, and under what conditions, further contract funds should be released to Briggs Brothers Enterprises Corporation.

29.     Rather than working with RLI and complying with its clear obligations under the Indemnity Agreement and common law, Briggs Brothers Enterprises Corporation took an adverse position to RLI and sent letters to numerous obligees, without notifying or copying RLI, making false statements about RLI's December 29, 2022 letters, undermining RLI's agreed upon rights, and wrongfully demanding the obligees ignore RLI's letters.

30.     RLI nonetheless continued to attempt to work with Briggs Brothers Enterprises Corporation to address the claims, including continuing to request access to Briggs Brothers Enterprises Corporation's books and records as provided for in the Indemnity Agreement. Briggs Brothers Enterprises Corporation continued to refuse to provide full access to its books and records. As a result, on January 12, 2023, RLI made formal demand for full access to Briggs Brothers Enterprises Corporation's books and records pursuant to Paragraph 13 of Indemnity Agreement. A true and correct copy of that January 12, 2023, demand is attached hereto as Exhibit B. While Briggs Brothers Enterprises Corporation provided some documentation related to its books and records, what information was provided was woefully inadequate and far from the demanded full access.

31.     RLI went above and beyond in its attempts to provide the Indemnitors with an opportunity to help resolve the substantial claims and precarious position their choices had placed them in, but they refused to take advantage of those opportunities. In light of the Indemnitors' multiple Defaults under the Indemnity Agreement, RLI also made demand on the Indemnitors by way of letter dated February 2, 2023, pursuant to paragraph 4 of the Indemnity Agreement to post collateral security with RLI in the amount of $2,000,000, which RLI determined in its discretion was necessary to protect it from potential and actual Loss. A true and correct copy of that February 2, 2023, demand is attached hereto as Exhibit C. Indemnitors specifically refused to comply with that demand by way of letter dated February 9, 2023.

**V.**
**CAUSES OF ACTION**

**COUNT ONE**
**BREACH OF INDEMNITY AGREEMENT**

32.     RLI incorporates and realleges the factual allegations in Paragraphs 1-31 above as if fully copied herein.

33.     Pursuant to Paragraph 3 of the Indemnity Agreement, Indemnitors agreed to, among other things, indemnify and hold RLI harmless from and against all Loss. Exhibit A, at ¶ 3. Loss is specifically defined in the Indemnity Agreement as follows:

> Any and all cost and expense of any kind or nature, including attorney fees, consulting, and other professional fees and expenses which [RLI] incurs in connection with any Bond or with enforcing the terms of this Agreement. Said cost and expense shall include, but not be limited to, [RLI]'s (i) investigation in connection with any Bond; (ii) prosecuting, litigating or defending any action, claim, or other cause of action related to a Bond; (iii) obtaining [RLI]'s release from any Bond; (iv) enforcing the terms of this Agreement by claim, demand, or litigation; and (v) all interest at the highest legal rate.

Exhibit A, at (d).

34.     Indemnitors also agreed, pursuant to Paragraph 4 of the Indemnity Agreement, that if at any time RLI is threatened with liability, receives a claim on a Bond, or believes that it may incur liability, Indemnitors would immediately upon demand pay RLI an amount that RLI, in its sole discretion, deems sufficient to protect it from a potential or actual loss. Exhibit A, at ¶ 4. In light of the significant threatened liability and multiples claims on the Bonds, RLI demanded that Indemnitors deposit funds with RLI in the amount of $2,000,000.00 on or before February 9, 2023, without prejudice to its rights to subsequently demand a further deposit of funds given the substantial amount of claims outstanding. Although $2,000,000.00 was far less than the apparent exposure based upon the numerous significant claims against the Bonds, which would clearly justify a higher demand, RLI's limited demand was made with the hope that the Indemnitors would

provide the demanded funds as required by the Indemnity Agreement and finally begin to work cooperatively with RLI to resolve the claims and ensure RLI was otherwise protected from Loss.

35.     However, despite RLI's demand upon Indemnitors, Indemnitors have failed and refused, and continue to fail and refuse, to honor their obligations under the Indemnity Agreement to indemnify and exonerate RLI, deposit collateral as demanded, and to provide access to books and records, and have, therefore, breached the Indemnity Agreement. RLI is entitled to recover all damages resulting from Indemnitors' breaches and to otherwise enforce the Indemnity Agreement by specific performance or otherwise.

**COUNT TWO**
**BREACH OF FIDUCIARY DUTY**

36.     RLI incorporates and realleges the factual allegations in Paragraphs 1-31 above as if fully copied herein.

37.     Paragraph 7 of the Indemnity Agreement imposes fiduciary duties on the Indemnitors to hold all contract funds identified therein in trust. The Indemnitors agreed that such funds would be held in trust for the benefit of RLI for the payment of all obligations arising in connection with the Projects, including any liability or loss RLI might sustain under the Bonds. As such, Paragraph 7 of the Indemnity Agreement created a fiduciary relationship between the Indemnitors and RLI.

38.     Upon information and belief, Indemnitors have wrongfully exercised dominion and control over and have taken possession of and retained certain bonded contract funds, which are trust funds for the benefit of RLI. The Indemnitors' failure and refusal to comply with their trust obligations and to ensure all bonded contract funds were tendered to RLI is a breach of the Indemnitors' fiduciary duties to RLI. This breach has directly resulted in damages to RLI, for

which it seeks recovery herein. Furthermore, RLI requests that the Court order that Indemnitors disgorge any trust funds still in their possession and that those funds be turned over to RLI.

## COUNT THREE
## COMMON LAW INDEMNIFICATION

39.    RLI incorporates and realleges the factual allegations in Paragraphs 1-31 above as if fully copied herein.

40.    Alternatively, by virtue of payments made, expenses incurred, and likely damages to be incurred by RLI in connection with the Bonds and Projects, all of the Briggs Brothers Enterprises Corporations received valuable benefits equal to at least the amount of the payments made and expenses incurred by RLI.

41.    As a result of such payments and expenses, the Briggs Brothers Enterprises Corporations impliedly agreed to indemnify RLI for all such payments.

42.    RLI has made demand upon the Indemnitors to fulfill their obligations to RLI, but the Indemnitors have failed and refused to do so. As a result of the Briggs Brothers Enterprises Corporations' breach of their common law indemnity obligations, RLI has suffered a direct and proximate loss and is entitled to recover from the Briggs Brothers Enterprises Corporations RLI's losses, fees, costs, and expenses, including, but not limited to, court costs and counsel fees, incurred as a result of issuing the Bonds to RLI and enforcing its rights under the Indemnity Agreement.

## COUNT FOUR
## COMMON LAW EXONERATION

43.    RLI incorporates and realleges the factual allegations in Paragraphs 1-31 above as if fully copied herein.

44.     Alternatively, in addition to its rights of exoneration in the Indemnity Agreement, RLI is entitled to be exonerated by all of the Briggs Brother Enterprises Corporations pursuant to the common law doctrine of equitable exoneration, from any and all liability for losses, fees, costs, and expenses, including, but not limited to, court costs and counsel fees, incurred as a result of issuing the Bonds. Exoneration is the obligation of a surety's principal to stand in front of and protect the surety from loss before any loss is incurred. RLI seeks entry of a judgment requiring the Briggs Brothers Enterprises Corporations to fully exonerate RLI from such losses, fees, costs, and expenses going forward.

**COUNT FIVE**
**COLLATERALIZATION/QUIA TIMET**

45.     RLI incorporates and realleges the factual allegations in Paragraphs 1-31 above as if fully copied herein.

46.     Alternatively, in addition to the contractual requirement set forth in Paragraph 4 of the Indemnity Agreement that Indemnitors deposit money or collateral to protect RLI from any and all liability for losses, fees, costs and expenses for which Indemnitors will be obliged to indemnify RLI under the Indemnity Agreement, RLI has a common law right to require the Briggs Brothers Enterprises Corporations to post collateral to avoid depletion of the Briggs Brothers Enterprises Corporations' assets and to ensure faithful performance of Indemnitors' obligations.

47.     RLI seeks an order requiring Briggs Brothers Enterprises Corporations to post collateral of a type and value satisfactory to RLI to cover RLI's liability pending the outcome of this action to avoid depletion of Briggs Brothers Enterprises Corporations' assets and to ensure faithful performance of the Briggs Brothers Enterprises Corporations' obligations.

# VI.
## CONDITIONS PRECEDENT

48.     All conditions precedent to RLI's entitlement to assert the above claims and causes of action have occurred or have been satisfied, waived, or excused.

# VII.
## REQUEST FOR RELIEF

For the foregoing reasons, Plaintiff RLI Insurance Company requests that Defendants Terry Briggs, Shawna Briggs, Briggs Brothers Enterprises Corporation, a Pennsylvania corporation, Briggs Brothers Enterprises Corporation, a Texas corporation, Briggs Brothers Enterprises Corporation, a Louisiana corporation, and Briggs Brothers Enterprises Corporation, a Georgia corporation, be cited to appear and answer this Complaint, and that the Court award RLI the following relief:

A.     Judgment against the Indemnitors, jointly and severally, and in favor of RLI for all losses, costs, and expenses of any kind or nature, including attorney fees, consulting, and other professional fees and expenses which RLI incurs in connection with any Bond or with enforcing the terms of the Indemnity Agreement; ordering deposit of collateral security in the amount of $2,000,000.00 with RLI; ordering the Indemnitors to provide RLI with full physical access to all books and records available at the earliest practicable time; and enjoining the Indemnitors from transferring or dissipating assets that are or may become available to them pending the Indemnitors' deposit of the full amount of collateral with RLI;

B.     Order that Indemnitors disgorge any trust funds still in their possession to RLI;

C.     Grant RLI injunctive relief against the Indemnitors requiring the Indemnitors to deposit cash, collateral, or other collateral security acceptable to RLI in the sum of $2,000,000.00 and grant physical access to all books, records, and documents available under the Indemnity Agreement;

D.     An award to RLI of its attorneys' fees, costs of court, pre- and post-judgment interest at the maximum amount allowed by law;

E.     Such other and further relief at law or in equity to which RLI is justly entitled.

Respectfully submitted,

*/s/ Christopher R. Ward*

Christopher R. Ward
cward@clarkhill.com
CLARK HILL PLC
2600 Dallas Parkway, Suite 600
Frisco, Texas 75034
Telephone:     (214) 651-4722
Facsimile:     (214) 659-4108

and

Daniel T. Graham (ARDC No. 6203811)
dgraham@clarkhill.com
Timothy R. Herman (ARDC No. 6301721)
therman@clarkhill.com
CLARK HILL PLC
130 E. Randolph Street, Suite 3900
Chicago, Illinois 60601
Telephone:     (312) 985-5900
Facsimile:     (312) 985-5979

**ATTORNEYS FOR PLAINTIFF**
**RLI INSURANCE COMPANY**

## DECLARATION OF DAVID J. GRYCZ

I, David J. Grycz, declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am over the age of 18 and competent to testify to the matters contained herein.

2.      I am the Assistant Vice President, Claims at RLI Insurance Company ("RLI"), Plaintiff in the above-captioned matter.

3.      I verify under penalty of perjury that the facts contained in the foregoing RLI's Original Verified Complaint are true and correct.

Executed on February **23**, 2023.

RLI INSURANCE COMPANY

By: _____
     David J. Grycz
     Assistant Vice President, Claims

---